MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------X
ERIK LEON REYES, *individually and on*
*behalf of others similarly situated,*

*Plaintiff*,

-against-

CENTRAL PARK BOATHOUSE, LLC.
(D/B/A THE LOEB BOATHOUSE), DEAN
POLL, MICHAEL AMORE, and RONNY
DOE,

*Defendants.*

------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

**ECF Case**

Plaintiff Erik Leon Reyes ("Plaintiff Leon" or "Mr. Leon"), individually and on behalf of

others similarly situated, by and through his attorneys, Michael Faillace & Associates, P.C., upon

his knowledge and belief, and as against Central Park Boathouse, LLC. (d/b/a The Loeb

Boathouse), ("Defendant Corporation"), Dean Poll, Michael Amore and Ronny Doe, ("Individual

Defendants"), (collectively, "Defendants"), alleges as follows:

<u>**NATURE OF ACTION**</u>

1.    Plaintiff Leon is a former employee of Defendants Central Park Boathouse, LLC.

(d/b/a The Loeb Boathouse), Dean Poll, Michael Amore and Ronny Doe.

2.    Defendants own, operate, or control an American restaurant, located at Park Drive

North, E 72nd St, New York, NY 10021 under the name "The Loeb Boathouse".

3.     Upon information and belief, individual Defendants Dean Poll, Michael Amore and Ronny Doe, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the restaurant as a joint or unified enterprise.

4.     Plaintiff Leon was employed as a food runner and a barback at the restaurant located at Park Drive North, E 72nd St, New York, NY 10021.

5.     At all times relevant to this Complaint, Plaintiff Leon worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that he worked.

6.     Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiff Leon appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

7.     Further, Defendants failed to pay Plaintiff Leon the required "spread of hours" pay for any day in which he had to work over 10 hours a day.

8.     In addition, at all relevant times, Defendants paid Plaintiff Leon at a rate that was lower than the required tip-credit rate.

9.     Defendants' conduct extended beyond Plaintiff Leon to all other similarly situated employees.

10.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiff Leon and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

11.     Plaintiff Leon now brings this action on behalf of himself, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of

1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

12.    Plaintiff Leon seeks certification of this action as a collective action on behalf of himself, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

13.    Plaintiff Leon also seeks to recover front and back pay, compensatory and punitive damages for violations of his rights under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e, *et seq.* (amended in 1972, 1978, and be the Civil Rights Act of 1991, Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), the New York State Executive Law, §290 et seq. (the "Human Rights Law"), and the Administrative Code of the City of New York, §8-107 et seq. (the "City Law").

14.    Specifically, Plaintiff Leon, a former employee of Defendants, suffered discrimination and harassment by Defendant Michael Amore and Ronny Doe because of his national origin and his gender and sex.

15.    Defendants Michael Amore and Ronny Doe's constant abusive, harassing and intimidating mistreatment caused him serious mental and emotional distress.

16.    Plaintiff Leon was constantly a victim of hits and punches, and of unwelcome sexual advances and verbal and physical conduct of sexual nature that explicitly affected his being and employment and made him feel intimidated and harassed.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction under the Title VII and Section 1981 claims because they arise under the laws of the United States, 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiff Leon's state law claims under 28 U.S.C. § 1367(a).

18.     It also has jurisdiction over the Title VII and Section 1981 claims under 28 U.S.C. § 1343 because Plaintiff Leon seeks to recover damages for deprivation of equal rights.

19.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate an American restaurant located in this district. Further, Plaintiff Leon was employed by Defendants in this district.

20.     Plaintiff Leon has fully satisfied all administrative prerequisites for commencing this action.

21.     On November 20, 2018, Plaintiff Leon filed a charge of employment discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging discrimination by Defendants Central Park Boathouse, LLC. (d/b/a The Loeb Boathouse), Dean Poll, Michael Amore and Ronny Doe based on his sex/gender, national origin and for civil battery.

22.     On December 3, 2018 the EEOC acknowledged said charge and on December 13, 2018, the EEOC issued Plaintiff Leon notices of right to sue, following Plaintiff Leon's formal request.

23.     Plaintiff Leon commenced this action within ninety days of his receipt of the notice of right to sue.

24.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and 2202.

## PARTIES

*Plaintiff*

25.    Plaintiff Erik Leon Reyes ("Plaintiff Leon" or "Mr. Leon") is an adult individual residing in Kings County, New York.

26.    Plaintiff Leon was employed by Defendants at "The Loeb Boathouse" from approximately June 27, 2011 until on or about November 4, 2018.

27.    However, Defendants laid off Plaintiff Leon from approximately November 2011 until on or about April 2012 and them from approximately November 2012 until on or about April 2013.

28.    Plaintiff Leon consents to being a party plaintiff pursuant to 29 U.S.C. § 216(b), and brings these claims based upon the allegations herein as a representative party of a prospective class of similarly situated individuals under 29 U.S.C. § 216(b).

*Defendants*

29.    At all relevant times, Defendants owned, operated, or controlled an American restaurant, located at Park Drive North, E 72nd St, New York, NY 10021 under the name "The Loeb Boathouse".

30.    Upon information and belief, Central Park Boathouse, LLC. (d/b/a The Loeb Boathouse) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at Park Drive North, E 72nd St, New York, NY 10021, and its corporate headquarters at 228 W. 52nd Street, New York, NY 10019.

31. Defendant Dean Poll is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Dean Poll is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Dean Poll possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiff Leon, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

32. Defendant Michael Amore is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Michael Amore is sued individually in his capacity as a manager of Defendant Corporation. Defendant Michael Amore possessed operational control over Defendant Corporation and controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiff Leon, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

33. Defendant Ronny Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Ronny Doe is sued individually in his capacity as a manager of Defendant Corporation. Defendant Ronny Doe possessed operational control over Defendant Corporation and controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiff Leon, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

34.    Defendants operate an American restaurant located in Central Park in New York City.

35.    Individual Defendants, Dean Poll, Michael Amore and Ronny Doe, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, or control significant functions of Defendant Corporation.

36.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

37.    Each Defendant possessed substantial control over Plaintiff Leon's (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiff Leon, and all similarly situated individuals, referred to herein.

38.    Defendants jointly employed Plaintiff Leon (and all similarly situated employees) and are Plaintiff Leon's (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

39.    In the alternative, Defendants constitute a single employer of Plaintiff Leon and/or similarly situated individuals.

40.    Upon information and belief, Individual Defendant Dean Poll operates Defendant Corporation as either an alter ego of himself and/or fail to operate Defendant Corporation as an entity legally separate and apart from himself, by among other things:

      a)    failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

b)  defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)  transferring assets and debts freely as between all Defendants,

d)  operating Defendant Corporation for his own benefit as the sole or majority shareholder,

e)  operating Defendant Corporation for his own benefit and maintaining control over this corporation as a closed Corporation,

f)  intermingling assets and debts of his own with Defendant Corporation,

g)  diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect his own interests, and

h)  Other actions evincing a failure to adhere to the corporate form.

41.    At all relevant times, Defendants were Plaintiff Leon's employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiff Leon, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiff Leon's services.

42.    In each year from 2012 to 2018, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

43.    In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiff*

44.    Plaintiff Leon is a former employee of Defendants who was employed as a food runner and a barback.

45.    Plaintiff Leon seeks to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Erik Leon Reyes*

46.    Plaintiff Leon was employed by Defendants from approximately June 27, 2011 until on or about November 4, 2018.

47.    However, Defendants laid off Plaintiff Leon from approximately November 2011 until on or about April 2012 and them from approximately November 2012 until on or about April 2013.

48.    Defendants employed Plaintiff Leon as a food runner and a barback.

49.    Plaintiff Leon regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

50.    Plaintiff Leon's work duties required neither discretion nor independent judgment.

51.    Throughout his employment with Defendants, Plaintiff Leon regularly worked in excess of 40 hours per week.

52.    From approximately April 2013 until on or about November 2013 and then from approximately April 2014 until on or about November 2014, Plaintiff Leon worked as a food runner from approximately 10:00 a.m. until on or about 9:00 p.m. to 11:00 p.m., 3 days a week and from approximately 8:00 a.m. until on or about 9:00 p.m. to 11:00 p.m., 2 days a week (typically 59 to 69 hours per week).

53.    From approximately April 2015 until on or about November 2015, Plaintiff Leon worked as a food runner from approximately 10:00 a.m. until on or about 9:00 p.m. to 11:00 p.m.,

3 days a week and from approximately 4:00 p.m. until on or about 9:00 p.m. to 11:00 p.m., 2 days a week (typically 43 to 53 hours per week).

54.    From approximately November 2015 until on or about April 2016, Plaintiff Leon worked as a barback 10 to 12 hours per day, 4 days a week (typically 40 to 48 hours per week).

55.    From approximately April 2016 until on or about November 2016, Plaintiff Leon worked as a barback from approximately 10:00 a.m. until on or about 9:00 p.m. to 11:00 p.m., 5 days a week (typically 55 to 65 hours per week).

56.    From approximately December 2016 until on or about April 2017, Plaintiff Leon worked as a barback 10 to 12 hours per day, 4 days a week (typically 40 to 48 hours per week).

57.    From approximately April 2017 until on or about July 2017, Plaintiff Leon worked as a barback from approximately 10:00 a.m. until on or about 9:00 p.m. to 11:00 p.m., 7 days a week (typically 77 to 91 hours per week).

58.    From approximately August 2017 until on or about November 2017, Plaintiff Leon worked as a barback from approximately 10:00 a.m. until on or about 9:00 p.m. to 11:00 p.m., 5 days a week (typically 55 to 65 hours per week).

59.    From approximately December 2017 until on or about April 2018, Plaintiff Leon worked as a barback 10 to 12 hours per day, 4 days a week (typically 40 to 48 hours per week).

60.    From approximately April 2018 until on or about May 2018, Plaintiff Leon worked as a barback from approximately 10:00 a.m. until on or about 9:00 p.m. to 11:00 p.m., 7 days a week (typically 77 to 91 hours per week).

61.    From approximately June 2018 until on or about November 4, 2018, Plaintiff Leon worked as a barback from approximately 10:00 a.m. until on or about 9:00 p.m. to 11:00 p.m., 5 days a week (typically 55 to 65 hours per week).

62.    Throughout his employment, Defendants paid Plaintiff Leon his wages by check.

63.    From approximately November 2012 until on or about December 2013, Defendants paid Plaintiff Leon $5.25 per hour for his first 40 hours worked and $7.87 per hour for some of his overtime hours.

64.    From approximately January 2014 until on or about December 2015, Defendants paid Plaintiff Leon $7.25 per hour for his first 40 hours worked per week and $10.87 per hour for some of his overtime hours.

65.    From approximately January 2016 until on or about November 4, 2018, Defendants paid Plaintiff Leon $8.96 per hour for his first 40 hours worked and $13.44 per hour for some of his overtime hours.

66.    Plaintiff Leon's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

67.    For example, Defendants required Plaintiff Leon to work 1 hour past his scheduled departure time one or two days per week, and did not pay him for the additional time he worked.

68.    Defendants seldom granted Plaintiff Leon any breaks or meal periods of any kind.

69.    Furthermore, Defendants deducted $13 from Plaintiff Leon's weekly paycheck for meals he never ate and five hours per week for breaks he seldom took.

70.    Although Plaintiff Leon was required to keep track of his time, Defendants' time tracking device did not accurately reflect his actual hours worked.

71.    On a number of occasions, Defendants required Plaintiff Leon to sign documents, the contents of which he was not allowed to review in detail.

72.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Leon regarding overtime and wages under the FLSA and NYLL.

73.    Defendants did not provide Plaintiff Leon an accurate statement of wages, as required by NYLL 195(3).

74.    In fact, Defendants adjusted Plaintiff Leon's paystubs so that they reflected inaccurate wages and hours worked.

75.    Defendants did not give any notice to Plaintiff Leon, in English and in Spanish (Plaintiff Leon's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

76.    Defendants required Plaintiff Leon to purchase "tools of the trade" with his own funds—including a pair of shoes of a specific brand required by Defendants.

*Discrimination Claims*

77.    Plaintiff Leon was constantly a victim of unwelcomed, sexual and humiliating conduct and comments that explicitly affected his well-being and employment, and made him extremely uncomfortable.

78.    These behaviors included getting punched in his genitals by the manager, Defendant Ronny Doe, on at least five distinct occasions: July 5, 2018 at or around 7:00 p.m., July 12, 2018 at or around 9:20 p.m., August 16, 2018 at or around 1:30 p.m., August 22, 2018 at or around 8:30 p.m. and August 23, 2018 at or around 3:21 p.m.

79.    On several occasions, when Plaintiff Leon was getting alcohol bottles from the liquor room, Defendant Ronny Doe approached Plaintiff Leon and shook his derriere towards Plaintiff Leon's privates, which made him feel very uncomfortable and helpless.

80.    So much that Plaintiff Leon had to stop or avoid going to the room when Defendant Ronny Doe was there or had to turn his back against him, so Defendant Ronny Doe would stop behaving that way.

81.    Defendants Ronny Doe engaged in a pattern of harassing behavior that included touching and punching Plaintiff Leon's genitals, against his will, as Plaintiff Leon performed his several duties at the restaurant.

82.    These instances included Defendant Ronny Doe randomly approaching Plaintiff Leon and punching him on his genitals.

83.    After these hits and punches, Defendant Ronny Doe would make fun of Plaintiff Leon and laugh of him with other coworkers, while Plaintiff Leon laid on the floor, in pain, confused and ashamed.

84.    Furthermore, on one occasion in or around April 2018, Defendant Michael Amore, the general manager of the restaurant, had his zipper open.

85.    When Plaintiff Leon told Defendant Michael Amore that his zipper was down, Defendant Michael Amore asked him "do you want to smell it? Do you want to suck my dick?" and laughed.

86.    However, this situation made Plaintiff Leon feel very uncomfortable and in distress, because it was the first time that Defendant Michael Amore said something like that to Plaintiff Leon and especially because he would have never expected any suggestion of this sort to come from the general manager.

87.    Plaintiff Leon complained with Defendant Ronny Doe about Defendant Michael Amore's conduct and vice versa, but both of them decided to ignore him and continued these actions.

88.    Plaintiff Leon believes that this harassing and discriminatory behavior was because, among other things, his race, his background and because Defendants thought Plaintiff Leon was

in a disadvantage due to the language and his position as an employee. Thus, Plaintiff Leon was thought to be weak and unable to defend himself or "fight back".

89.    Such was the case that once, in or around September 2018, Plaintiff Leon told Defendant Michael Amore that Plaintiff Leon had to travel back to his country. However, this trip was later cancelled.

90.    When Plaintiff Leon told Defendant Michael Amore that the trip was cancelled, Defendant Michael Amore told him "oh, so you're not going to Mexico? Because I know of ICE's and Trump's offices on 5th Avenue that can take you back to Mexico quickly."

91.    Plaintiff Leon considered this comment was very inappropriate, harassing and discriminatory; especially because Defendant Michael Amore made such comment at lunchtime in front of other employees and coworkers, who laughed at Plaintiff Leon and made fun of him.

92.    Despite Plaintiff Leon's repeated complaints about this sexual harassing, discriminatory conduct and overall intimidating behavior, neither Defendant Ronny Doe nor Defendant Michael Amore did anything about it.

93.    Plaintiff Leon was constantly a victim of abusive, harassing, offending and humiliating mistreatment that explicitly affected his being and employment.

94.    These behaviors including advances of sexual content, request for sexual favors and verbal and physical conduct of sexual nature, which made Plaintiff Leon feel very intimidated.

95.    Defendants Michael Amore and Ronny Doe's constant abusive, harassing, offending and humiliating mistreatment affected Plaintiff Leon's employment and caused him serious mental and emotional distress.

*Defendants' General Employment Practices*

96.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiff Leon (and all similarly situated employees) to work in excess of 40 hours a week without paying him appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

97.     Plaintiff Leon was a victim of Defendants' common policy and practices which violated his rights under the FLSA and New York Labor Law by, inter alia, not paying him the wages he was owed for the hours he worked.

98.     Defendants' pay practices resulted in Plaintiff Leon not receiving payment for all his hours worked, and resulted in Plaintiff Leon's effective rate of pay falling below the required minimum wage rate.

99.     Defendants habitually required Plaintiff Leon to work additional hours beyond his regular shifts but did not provide him with any additional compensation.

100.     Plaintiff Leon and all other tipped workers were paid at a rate that was lower than the lower tip-credit rate by Defendants.

101.     Defendants failed to inform Plaintiff Leon who received tips that Defendants intended to take a deduction against Plaintiff Leon's earned wages for tip income, as required by the NYLL before any deduction may be taken.

102.     Defendants failed to inform Plaintiff Leon who received tips, that his tips were being credited towards the payment of the minimum wage.

103.     Defendants failed to maintain an accurate record of tips earned by Plaintiff Leon who worked as a food runner and a barback for the tips he received.

104.     Defendants' time keeping system did not reflect the actual hours that Plaintiff Leon worked.

105.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

106.    On a number of occasions, Defendants required Plaintiff Leon to sign documents the contents of which he was not allowed to review in detail.

107.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

108.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiff Leon (and similarly situated individuals) worked, and to avoid paying Plaintiff Leon properly for his full hours worked.

109.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

110.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiff Leon and other similarly situated former workers.

111.    Defendants failed to provide Plaintiff Leon and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the

number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

112.    Defendants failed to provide Plaintiff Leon and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

113.    Plaintiff Leon brings his FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

114.    At all relevant times, Plaintiff Leon and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records, as required under the FLSA.

115.    The claims of Plaintiff Leon stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

116.    Plaintiff Leon repeats and realleges all paragraphs above as though fully set forth herein.

117.    At all times relevant to this action, Defendants were Plaintiff Leon's employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiff Leon (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

118.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

119.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

120.  Defendants failed to pay Plaintiff Leon (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

121.    Defendants' failure to pay Plaintiff Leon (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

122.    Plaintiff Leon (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

123.    Plaintiff Leon repeats and realleges all paragraphs above as though fully set forth herein.

124.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiff Leon (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

125.    Defendants' failure to pay Plaintiff Leon (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

126.    Plaintiff Leon (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

127.    Plaintiff Leon repeats and realleges all paragraphs above as though fully set forth herein.

128.    At all times relevant to this action, Defendants were Plaintiff Leon's employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiff Leon, controlled the terms and conditions of his employment, and determined the rates and methods of any compensation in exchange for his employment.

129.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiff Leon less than the minimum wage.

130.    Defendants' failure to pay Plaintiff Leon the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

131.    Plaintiff Leon was damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS

### OF THE NEW YORK STATE LABOR LAW

132.    Plaintiff Leon repeats and realleges all paragraphs above as though fully set forth herein.

133.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq.*, and supporting regulations of the New York State Department of Labor, failed to pay Plaintiff Leon overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

134.    Defendants' failure to pay Plaintiff Leon overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

135.    Plaintiff Leon was damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

### OF THE NEW YORK COMMISSIONER OF LABOR

136.    Plaintiff Leon repeats and realleges all paragraphs above as though fully set forth herein.

137.    Defendants failed to pay Plaintiff Leon one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiff Leon's spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq.* and 12 N.Y.C.R.R. §§ 146-1.6.

138.    Defendants' failure to pay Plaintiff Leon an additional hour's pay for each day Plaintiff Leon's spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

139.    Plaintiff Leon was damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

140.    Plaintiff Leon repeats and realleges all paragraphs above as though fully set forth herein.

141.    Defendants failed to provide Plaintiff Leon with a written notice, in English and in Spanish (Plaintiff Leon's primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

142.    Defendants are liable to Plaintiff Leon in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

143.    Plaintiff Leon repeats and realleges all paragraphs above as though fully set forth herein.

144.    With each payment of wages, Defendants failed to provide Plaintiff Leon with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

145.    Defendants are liable to Plaintiff Leon in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

146.     Plaintiff Leon repeats and realleges all paragraphs above as though fully set forth herein.

147.    Defendants required Plaintiff Leon to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform his job, further reducing his wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

148.    Plaintiff Leon was damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION

**OF THE NEW YORK LABOR LAW**

149.    Plaintiff Leon repeats and realleges all paragraphs above as though fully set forth herein.

150.    At all relevant times, Defendants were Plaintiff Leon's employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

151.    Defendants made unlawful deductions from Plaintiff Leon's wages including, but not limited to, deductions for meals he never ate and meals breaks he seldom took.

152.    The deductions made from Plaintiff Leon's wages were not authorized or required by law.

153.    Through their knowing and intentional efforts to take unauthorized deductions from Plaintiff Leon's wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

154.    Plaintiff Leon was damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

## DISCRIMINATION BASED ON NATIONAL ORIGIN AND SEX

## IN VIOLATION OF TITLE VII

155.    Plaintiff Leon repeats and realleges all paragraphs above as though fully set forth herein.

156.    Title VII, 42 U.S.C. § 2000(e)-2(a) provides that it shall be unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin."

157.    At times material herein, Defendants were employers within the meaning of Title VII.

158.    Plaintiff Leon is a member of protected classes.

159.    In violation of Title VII, Defendants intentionally discriminated against Plaintiff Leon by subjecting him to disparate treatment on account of being a Hispanic male, and by denying him the more favorable compensation, terms, conditions, and privileges of employment enjoyed by similarly-situated employees who are not Hispanic.

160.    In violation of Title VII, Defendants' acts and omissions constitute a continuing violation and an ongoing policy and practice of intentional discrimination motivated by animus toward Plaintiff Leon's national origin and sex.

161.    Defendants' acts and omissions were related to the unlawful discrimination within the limitations period.

162.    The acts and omissions alleged herein were reckless, malicious and made with callous disregard and deliberate indifference to the rights of Plaintiff Leon.

163.    As a direct and proximate cause of this misconduct, Plaintiff Leon has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other benefits of employment, and has suffered other damages such as mental anguish, damage to reputation, emotional distress, and humiliation.

164.    Plaintiff Leon has been damaged in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION

### VIOLATION OF SECTION 1981 OF THE CIVIL RIGHTS ACT OF 1866

165.    Plaintiff Leon repeats and realleges all paragraphs above as though fully set forth herein.

166.    At all times material herein, Defendants are an employer within the meaning of Section 1981of the Civil Rights Act of 1866 (42 U.S.C. ss.1981).

167.    On numerous occasions, Defendants wrongfully discriminated against Plaintiff Leon because of his race and/or national origin, contrary to section 1981 of the Civil Rights Act of 1866

168.    In discriminating against Plaintiff Leon, Defendants and their agents and employees knew and acted in deliberate disregard of Plaintiff Leon's lawful civil rights

169.    As a result of Defendant's Discriminatory acts, Plaintiff Leon has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other reemployment benefits, and has suffered other monetary damages and compensatory damages for, inter alia, mental anguish, emotional distress, and humiliation.

170.    The acts and omissions alleged herein were reckless, malicious, and made with callous disregard and deliberate indifference to Plaintiff Leon's rights.

171.    Plaintiff Leon has been damaged in an amount to be determined at trial.

## TWELFTH CAUSE OF ACTION

### VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

172.    Plaintiff Leon repeats and realleges all paragraphs above as though fully set forth herein.

> New York City Admin. Code § 8-107(1) provides that: It shall be an unlawful discriminatory practice (a) [f]or an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual orientation or alienage or citizenship status of any person: (1) [t]o represent that any employment or position is not available when in fact it is available; (2) [t]o refuse to hire or employ or to bar or to discharge from employment such person; or (3) [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment.

173.    Prior to filing this Complaint, Plaintiff Leon further served a copy of this Complaint upon the New York City Commission on Human Rights and the Corporation Counsel of the City of New York in accordance with N.Y.C. Admin. Code § 8-502(c).

174.   At all times material herein, Defendants are employers within the meaning of the New York City Human Rights Law, N.Y.C.A.C. § 8-107.

175.   Defendants Michael Amore and Ronny Doe wrongfully discriminated against Plaintiff Leon because of his race and/or national origin and his sex/gender, contrary to the New York City Human Rights Law, N.Y.C.A.C. § 8-107.

176.   In discriminating against Plaintiff Leon because of his race and/or national origin and his sex/gender, Defendants Michael Amore and Ronny Doe knew and acted in deliberate disregard of Plaintiff Leon's lawful civil rights.

177.   As a direct and proximate cause  of Defendants Michael Amore and Ronny Doe's discriminatory acts, Plaintiff Leon has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other reemployment benefits, and has suffered other monetary damages and compensatory damages for, inter alia, mental anguish, emotional distress, and humiliation.

178.   The acts and omissions alleged herein were reckless, malicious, and made with callous disregard and deliberate indifference to Plaintiff Leon's rights.

179.   Plaintiff Leon has been damaged in an amount to be determined at trial.

## THIRTEENTH CAUSE OF ACTION

## DISCRIMINATION BASED ON NATIONAL ORIGIN AND SEX IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

180.   Plaintiff Leon incorporates and re-alleges each preceding paragraph as though fully restated.

181.   New York State Executive Law § 296(1)(a) provides that it shall be an unlawful discriminatory practice:

[f]or an employer . . . because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions of privileges of employment.

182.    At all times material herein, Defendants are employers within the meaning of the New York State Human Rights Law.

183.    Defendants' acts and omissions constitute national origin and sex discrimination and retaliation in violation of the New York State Human Rights Law.

184.    In violation of the New York State Human Rights Law, Defendants' acts and omissions constitute a continuing violation and ongoing policy and practice of intentional discrimination and retaliation motivated by animus towards Plaintiff Leon's national origin and sex.

185.    Defendant's acts and omissions were related to the unlawful discrimination and retaliation within the limitations period.

186.    The acts and omissions alleged herein were reckless, malicious and made with callous disregard and deliberate indifference to the rights of Plaintiff Leon.

187.    As a direct and proximate cause of this misconduct, Plaintiff Leon has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other benefits of employment, and has suffered other damages such as mental anguish, damage to reputation, emotional distress, and humiliation.

188.    Plaintiff Leon has been damaged in an amount to be determined at trial.

## FOURTEENTH CAUSE OF ACTION

### CIVIL BATTERY

189.    Plaintiff Leon hereby repeats and realleges all paragraphs above as though set forth fully herein.

190.    Defendant Ronny Doe intentionally touched Plaintiff Leon repeatedly when he was working by hitting him, punching him and harming him physically.

191.    Such contact was offensive to Plaintiff Leon and was without his consent.

192.    Plaintiff Leon suffered damages as a result of Defendant Bruno's intentional touching of him, including severe emotional distress.

193.    Plaintiff Leon further seeks punitive damages against Defendants Michael Amore and Ronny Doe.

194.    Such contact was intentional.

195.    Plaintiff Leon suffered harm, discomfort, and emotional trauma as a result of Defendant Bruno's unwanted physical touching of him.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Leon respectfully requests that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff Leon and the FLSA Class members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff Leon and the FLSA Class members;

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiff Leon's and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiff Leon and the FLSA Class members;

(f)     Awarding Plaintiff Leon and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiff Leon and the FLSA Class members liquidated damages in an amount equal to 100% of his damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiff Leon;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiff Leon;

(j)     Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiff Leon;

(k)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiff Leon's compensation, hours, wages and any deductions or credits taken against wages;

(l)     Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiff Leon;

(m)     Declaring that the acts and practices complained herein violated Title VII, Section 1981, the New York City Human Rights Law and the New York State Human Rights Law;

(n)     Awarding Plaintiff Leon damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(o)     Awarding Plaintiff Leon damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)     Awarding Plaintiff Leon liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)     Awarding Plaintiff Leon and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(r)      Awarding Plaintiff Leon and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(s)     Awarding Plaintiff Leon back pay, front pay, compensatory and punitive damages and all other appropriate relief under Section 1981 of the Civil Rights Act of 1866 and the NYHRL,

(t)     Awarding Plaintiff Leon compensatory damages, punitive damages, attorneys' fees, and all other appropriate relief under the NYCHRL;

(u)     Making Plaintiff Leon whole for all earnings he would have received but for Defendant's' discriminatory, retaliatory and unlawful treatment, including, but not limited to, wages, bonus payments, health insurance and other fringe benefits, bonuses, pension, back pay, front pay, and other lost employment benefits;

(v)      Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(w)      All such other and further relief as the Court deems just and proper.

## JURY DEMAND

  Plaintiff Leon demands a trial by jury on all issues triable by a jury.

Dated: New York, New York
           December 18, 2018

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:      _____/s/ Michael Faillace_____
           Michael Faillace [MF-8436]
           60 East 42nd Street, Suite 4510
           New York, New York 10165
           Telephone: (212) 317-1200
           Facsimile: (212) 317-1620
           *Attorneys for Plaintiff*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 9, 2018

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Erik Leon Reyes

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           9 de agosto

*Certified as a minority-owned business in the State of New York*